UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | | |
|---|---|---|
| FRIENDS OF ANIMALS, | * | |
| | * | |
| Plaintiff, | * | |
| | * | |
| v. | * | |
| | * | Civil Action No. 15-30011-MGM |
| PAUL PHIFER, Assistant Regional Director | * | |
| of Ecological Services for the Northeast | * | |
| Region Office of the U.S. Fish and Wildlife | * | |
| Services, and DAN ASHE, Director of the | * | |
| U.S. Fish and Wildlife Service | * | |
| | * | |
| Defendants. | * | |

MEMORANDUM AND ORDER REGARDING DEFENDANTS'
MOTION TO TRANSFER CASE
(Dkt. No. 8)

April 29, 2015

MASTROIANNI, U.S.D.J.

I.      INTRODUCTION

Friends of Animals ("Plaintiff"), a non-profit animal advocacy organization, brings this

action against Paul Phifer and Dan Ashe ("Defendants"), in their capacities as Assistant Regional

Director of Ecological Services for the Northeast Region Office, and Director of the U.S. Fish and

Wildlife Services, respectively, pursuant to § 10 of the Endangered Species Act, 16 U.S.C. § 1539.

Plaintiff seeks a declaration that Defendants' issuance of an Incidental Take Permit ("ITP") to the

state of Maine was arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with

federal law, and requests the ITP be vacated. Presently before the court is Defendants' motion to

transfer the case to the District of Maine pursuant to 28 U.S.C. § 1404(a). For the following reasons,

the court concludes transfer of this action to the District of Maine is warranted and therefore will

allow Defendants' Motion to Transfer Case. (Dkt. No. 8.)

## II.   FACTUAL BACKGROUND AND PROCEDURAL HISTORY

This case arises out of the Fish and Wildlife Service's issuance of an ITP under the Endangered Species Act, 16 U.S.C. § 1539(a)(1)(B), to the state of Maine for incidental trapping of Canada lynx. These lynx are medium-sized cats distinguished by their long legs, large furry paws, long tufts on their ears, and a short, black-tipped tail. (Dkt. No. 1 ("Compl.") ¶ 21.) In the contiguous United States, lynx primarily reside in mixed coniferous and deciduous forests, historically in the most northern states and western mountainous areas as far south as Colorado. (Compl. ¶¶ 23-24.) However, the lynx population in the United States has declined, and the population now remains in four main regions: the Northeast, the Great Lakes, the Northern Rocky Mountains/Cascades, and the Southern Rocky Mountains. (Compl. ¶ 24.) In the Northeast region, lynx historically resided in Maine, New Hampshire, Vermont, and New York. (Compl. ¶ 25.) It is possible that lynx have been eradicated from all Northeast states except for Maine, "making Maine a unique geographic area important to lynx in the contiguous United States." (Compl. ¶ 25.)

On March 24, 2000, the Fish and Wildlife Service listed the Distinct Population Segment of the Canada lynx as threatened with extinction under the Endangered Species Act. (Compl. ¶ 28.) The Fish and Wildlife Service also designated Maine as a critical habitat for lynx, as it is "the only state in the Northeastern region of Canada lynx's current range within the contiguous United States." (Compl. ¶ 30.) The Fish and Wildlife Service also expressed concern in its listing decision about the loss of lynx through legal or illegal trapping or shooting. (Compl. ¶ 29.)

In 2007, several plaintiffs filed suit against the state of Maine in the District of Maine concerning the effects of the state's furbearer trapping program on the Canada lynx, alleging the state had authorized trappers to take Canada lynx in violation of the Endangered Species Act. (Compl. ¶ 41.) Thereafter, the state of Maine agreed to a settlement that was memorialized in a Consent Decree and Order issued by the court on October 4, 2007. (Compl. ¶ 42, Exhibit A.) The

Consent Decree and Order imposed various restrictions on trapping activities in areas of Maine considered lynx habitat. (Compl. ¶ 42.) It also contained a provision allowing the state to pursue a court order terminating the Consent Decree if the state were to obtain an Endangered Species Act ITP from the Fish and Wildlife Service which would allow for lynx to be incidentally caught within the state of Maine. (Compl. ¶¶ 34, 42.) The district court in Maine also retains continuing jurisdiction over that case until the Consent Decree is terminated in order to enforce its terms and conditions, modify or terminate it where good cause is shown, and to resolve any disputes arising from it. (Compl. ¶ 11, Exhibit A.)

On August 13, 2008, Maine submitted an application along with a draft incidental take plan to the Northeast Region Office of Fish and Wildlife Service in Hadley, Massachusetts for an ITP for the incidental trapping of lynx within the state of Maine. (Compl. ¶ 43.) In late 2011, the Fish and Wildlife Service solicited public input on Maine's proposed incidental take plan. (Def. Mem. at 2.) Maine revised its proposed plan in July of 2013 in response to public comment. (Compl. ¶ 44.) In October of 2014, Maine submitted a final incidental take plan, requesting authorization to increase the taking of lynx by 20% in the state. (Compl. ¶¶ 45-46.)

The Fish and Wildlife Service approved the ITP and final incidental take plan with no additional restrictions or conditions. (Compl. ¶ 48-49.) The ITP covers all licensed trappers in the state of Maine and the state itself, and authorizes the taking of 195 Canada lynx: up to 183 may be captured and released with no or minor injuries, nine may be taken and released after severe injuries, and up to three may be killed or non-releasable due to injuries. (Compl. ¶ 50-51.) It also requires maintaining and enhancing 6,200 acres of lynx habitat as a mitigation measure. (Compl. ¶ 54.)

On January 22, 2015, Plaintiff, a non-profit organization incorporated in the state of New York with many members residing in Maine and recreating in areas affected by the permit, brought this action against Defendants challenging the approval and issuance of the ITP to the state of

Maine under 16 U.S.C. § 1539. (Compl. ¶¶ 1, 7.) Defendants filed a motion to transfer the case to the District of Maine. (Dkt. No. 8.)[1]

### III.    STANDARD OF REVIEW

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought." 28 U.S.C. § 1404(a). "The statute is intended to place discretion in the district court to adjudicate motions for transfer according to an individualized, case-by-case consideration of convenience and fairness." Stewart Org., Inc. v. Ricoh Corp., 487 U.S. 22, 29 (1988); Astro-Med, Inc. v. Nihon Kohden Am., Inc., 591, F.3d 1, 12 (1st Cir. 2010).

> Courts frequently divide factors they consider into private and public categories…. Private factors include the statutory considerations of convenience of the parties and witnesses, but also include the plaintiff's forum preference, where the claim arose, and the relative ease of access to sources of proof. Public factors, which encompass the statutory consideration of the interest of justice, focus on judicial economy and often include the district court's familiarity with governing law, the local interest in deciding local controversies at home, and the relative congestion of the courts.

Amary v. JP Morgan Chase & Co., 2012 WL 6045980, at *2 (D. Mass. Oct. 18, 2012) (citing 15 Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction 3d § 3847 (2007)); see also Cianbro v. Curran-Lavoie, Inc., 814 F.2d 7, 11 (1st Cir. 1987); Kleinerman v. Luxtron Corp., 107 F.Supp.2d 122, 125 (D. Mass. 2000); F.A.I. Elecs. Corp. v. Chambers, 944 F.Supp. 77, 80-81 (D. Mass. 1996) (citing Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 508 (1947)). The burden rests with the defendant to show that a transfer is warranted. Shipley Company, Inc. v. Clark, 728 F.Supp. 818, 823 (D.Mass.1990).

---

[1] The state of Maine subsequently filed a motion to intervene in which it indicated its "wholehearded[ ] support[ ]" for the motion to transfer, in addition to an answer to the complaint on March 20, 2015. (Dkt. No. 13; Dkt. No. 14 at 9.) Defendant filed an answer to the complaint on March 30, 2015. (Dkt. No. 21.) The U.S. Sportsmen's Alliance Foundation and Maine Trappers Association filed a motion to intervene on April 3, 2015, in addition to a motion for leave to file Proposed Joinder in Support of Federal Defendants' Motion to Transfer. (Dkt. No. 22; Dkt. No. 28.) In light of its resolution of the motion to transfer, the court will not rule on these additional motions but, instead, will leave that to the transferee court. Without opining as to the merits of these motions, the court notes that, if the proposed intervenors were permitted to intervene, this would provide additional support for transferring the case, as noted below.

## IV.  DISCUSSION

As a threshold matter, "a court must determine first whether the case 'might have been brought' in the suggested transferee district and, if so, whether convenience and the interest of justice favor transfer." <u>Wiley v. Gerber Products Co.</u>, 667 F.Supp.2d 171, 172 (D. Mass. 2009). Venue is proper in suits against the agencies of the United States in any judicial district in which the plaintiff resides, a defendant in the action resides, or a substantial part of the events or omissions giving rise to the claim occurred. 28 U.S.C. § 1391(e)(1).

Clearly, this case could have been brought in the District of Maine, and Plaintiff does not argue otherwise. Plaintiff brings this action pursuant to federal question jurisdiction and, thus, just as the District of Massachusetts has subject matter jurisdiction, so does the District of Maine. The District of Maine is also where a substantial part of the events giving rise to the claim occurred. The ITP was issued to the state of Maine for trapping activities conducted in Maine by all licensed trappers and by the state itself. (<u>See</u> Compl. ¶ 51.) Plaintiff's claims implicate a Consent Decree entered by a district court in the District of Maine, to which the state of Maine was a party. (<u>See</u> Compl. ¶ 42; Exhibit A.) Plaintiff's members reside in Maine and recreate in areas affected by the permit. (<u>See</u> Compl. ¶ 7.) Many of the administrative proceedings leading to the issuance of the ITP took place in Maine, including the Notice of Availability that directed all comments be sent to the Fish and Wildlife Service's Maine Field Office in Orono, Maine. In addition, public meetings regarding Maine's application for the permit were held in three different locations in Maine, the Draft Environmental Assessment was prepared and revised by the Maine Field Office, and the Biological Opinion evaluating the Fish and Wildlife Service's proposal to issue the permit to Maine was completed by the Maine Field Office. (<u>See</u> Dkt. No. 20 at 1, 2.)

Because Plaintiff's claims could have been brought in the District of Maine, the court now addresses "whether convenience and the interest of justice favor[s] transfer." 28 U.S.C. § 1404(a).

"In making that determination, the [c]ourt is mindful that the statute's purpose is 'to prevent the waste of time, energy and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" <u>Wiley</u>, 667 F.Supp.2d at 172 (citing <u>Van Dusen v. Barrack</u>, 376 U.S. 612, 616 (1964)). With this background, the court is satisfied that Defendants have made a sufficient showing that transfer in this case is warranted, in the interests of justice, due to the direct and unique impact the outcome of this case will have upon the residents of Maine.

A.    <u>Private Factors</u>

Plaintiff contends transfer should be denied because this action has been appropriately brought in the District of Massachusetts where the Fish and Wildlife Service's Northeast Region Office is located, and strongly asserts its choice in forum is entitled to deference. Generally, there is a "strong presumption in favor of the plaintiff's choice of forum." <u>Coady v. Ashcraft & Gerel</u>, 223 F.3d 1, 11 (1st Cir. 2000). However, "the plaintiff's venue choice is to be given less weight if… the plaintiff is a nonresident of the chosen forum." <u>United States ex rel. Ondis v. City of Woonsocket, R.I.</u>, 480 F.Supp.2d 434, 436 (D. Mass. 2007)(citing 15 Wright, Miller & Cooper, <u>Federal Practice and Procedure: Jurisdiction 3d</u> § 3848 at 134-39 (2007)); <u>see also</u> <u>Piper Aircraft Co. v. Reyno</u>, 454 U.S. 235, 266 (1981) ("[T]he presumption applies with less force when the plaintiff or real parties in interest are foreign."); <u>Fifty-Six Hope Rd. Music, Ltd. V. Raisining Cane's USA, LLC</u>, 2014 WL 496890, at * 3 (The presumption in favor of a plaintiff's choice in forum "applies with less force than usual because the Commonwealth is not its home state."). Because Plaintiff is a resident of New York, its choice of venue will be given less weight. (<u>See</u> Compl. at ¶ 7.) As such, the court finds Plaintiff's choice of forum weighs, at best, only slightly against transfer.

Plaintiff and Defendants recognize the convenience of witnesses is a neutral factor on balance. (<u>See</u> Def. Mem. at 9; Dkt. No. 11 ("Pltf. Mem.") at 10.) Both parties acknowledge this case will be decided based upon the content of the administrative record and not on the basis of any

witness testimony. (See Def. Mem. at 9; Pltf. Mem. at 10.) While the convenience of witnesses is typically the most important factor in considering a motion to transfer venue, neither party plans to evidence its case with witness testimony. See Brant Point Corp. v. Poetzsch, 671 F.Supp. 2, 3 (D. Mass. 1987). Therefore, the convenience of witnesses is less critical when assessing venue in a record review case. Cole v. Cent. States Southeast, 227 F.Supp.2d 190, 199 (D. Mass. 2002). Additionally, because the administrative record is substantially electronic, the "[l]ocation [of documents] is mostly irrelevant." See CardiAQ Valve Technologies, Inc. v. Neovasc, Inc., 2014 WL 5151320, at *2 (D. Mass. Oct. 3, 2014).

Plaintiff, however, argues this venue is more convenient for the parties because Plaintiff will incur additional expenses to send its counsel to and obtain local counsel in the state of Maine. While Plaintiff may incur some additional costs to obtain local counsel in Maine, convenience of counsel is not a convincing argument. "[T]he word 'counsel' does not appear anywhere in § 1404(a), and the convenience of counsel is not a factor to be assessed in determining whether to transfer a case under § 1404(a)." Ondis, 480 F.Supp.2d at 437. Moreover, Defendants argue the case is likely to be resolved on motions to dismiss or for summary judgment, and thus the parties will incur limited additional travel costs if the case is transferred. (See Def. Mem. at 9.) In sum, the private factors weigh slightly against transfer, if at all, on balance.

B.    Public Factors

While the private factors are neutral or weigh slightly against transfer, the court concludes the public factors heavily favor a transfer. This case concerns issues of uniquely local concern to the state of Maine, including a Consent Decree and Order entered by a federal court in Maine and which it retains continuing jurisdiction over.

Plaintiff argues the issuance of an ITP to the state of Maine is not of just local concern but of national concern as well, due to the consequences for the national management of Canada lynx,

citing to the D.C. Circuit case <u>Otay Mesa Property L.P. v. U.S. Dept. of Interior</u>, 584 F.Supp.2d 122 (D.C. Cir. 2008). Plaintiff further contends this case is especially a matter of national concern because the ITP issued to Maine might establish a national precedent for other Fish and Wildlife Service permit actions regarding the trapping of lynx.

While it may be true that management of Canada lynx is of national concern, this case's connection to the District of Maine heavily outweighs its connection to the District of Massachusetts. Although <u>Otay</u> is instructive and contains a very similar factual analysis, this case is ultimately distinguishable. In <u>Otay</u>, the court considered a motion to transfer brought by the defendant U.S. Department of the Interior. <u>Otay</u>, 584 F.Supp.2d at 124. The plaintiff had brought a claim in a district court in the District of Columbia challenging the Fish and Wildlife Service's final rule designating a portion of private land as the critical habitat of the San Diego fairy shrimp located in southern California. <u>Id</u>. at 123-24. The court's determination ultimately hinged on whether the controversy was local in nature, utilizing the following factors: (1) where the challenged decision was made; (2) whether the decision directly affected the citizens of the transferee state; (3) the location of the controversy; (4) whether the issue involved federal constitutional issues rather than local property laws or statues; (5) whether the controversy involved issues of state law; (6) whether the controversy has some national significance; (7) and whether there was personal involvement in the District of Columbia. <u>Id</u>. at 126.

In analyzing these factors, the court found they weighed against transfer. <u>Id</u>. at 127. Importantly, the court found the outcome of the case had no more "direct or unique impact" upon the residents of San Diego than residents of the District of Columbia, as "this is an issue regarding the critical habitat of an endangered species whose vitality is as much a national concern as it is a local concern." <u>Id</u>. at 126-27. The court, therefore, denied the defendant's motion to transfer the case. <u>Id</u>. at 126-27.

The instant case is distinguishable from <u>Otay</u>. Here, the record directly evidences that the state itself and the residents of Maine will be directly and uniquely impacted by the outcome of this case. (<u>See</u> Compl. ¶¶ 7, 51.) The state of Maine, an applicant intervenor-defendant, has also alleged "[t]he ITP is of significant value to the State, and this lawsuit will determine whether the ITP is valid…. Maine obtained the ITP so it could continue to exercise [its police] power [to regulate wildlife within its borders] through implementation of its wildlife trapping program without threat of further litigation." (<u>See</u> Dkt. No. 14. at 9.) The U.S. Sportsmen's Alliance Foundation, which has over a dozen members in Maine, and the Maine Trappers Association, which has over 1,200 members in Maine,[2] have alleged if the ITP is invalidated pursuant to this action, such members may face "criminal and civil prosecution under the Endangered Species Act should they accidentally catch a lynx." (<u>See</u> Dkt. No. 23. at 3.) Maine Trappers Association has particularly evidenced two Maine licensed resident trappers, Steven Wilcox and David Miller, who will allegedly be directly affected by the invalidation of the ITP through criminal and civil prosecution. (<u>See</u> Dkt. No. 23 at 5-6.)

In contrast, <u>Otay</u> directly affected only the plaintiffs in that case who "oppose[d] the inclusion of a part of their property in the land designated as critical habitat." <u>Otay</u>, 584 F.Supp.2d at 128. The court specifically noted that "[t]he land at issue is private property that is not accessible to the public" and "the outcome of the case will not affect the local water supply, availability of irrigation water, flood levels or economic development of San Diego County, or have any other foreseeable direct impact on the residents of San Diego County." <u>Id</u>. <u>See</u> <u>also</u> <u>Preservation Soc. of Charleston v. U.S. Army Corps of Engineers</u>, 893 F.Supp.2d. 49, 58-59 (2012) (noting that the court in <u>Otay</u> "determined that the controversy was not of <u>generalized</u> local interest because it was, in a sense, too localized: as it only touched on these particular parcels of land, there was no broad local

---

[2] Both entities are also applicant intervenor-defendants in this action.

interest in the controversy and it could be properly heard in the District of Columbia." (emphasis in original)). Moreover, Plaintiff's allegation that this particular ITP will act as precedent for other Fish and Wildlife Service ITPs is unconvincing, as each applicant must undergo an administrative process where environmental assessments and incidental take plans are particularized to such applicant. Accordingly, the public factors weigh in favor of transfer.

In the end, the court concludes transfer of this action under 28 U.S.C. § 1404(a) is warranted. Not only could this action been brought in the District of Maine, but in weighing the unique circumstances at issue here, the court finds a transfer to that forum convenient and in the interest of justice.

V.    C<small>ONCLUSION</small>

For these reasons, the court ALLOWS Defendant's Motion to Transfer the Case (Dkt. No. 8) in its entirety to the state of Maine.

It is So Ordered.


   /s/ Mark G. Mastroianni      
MARK G. MASTROIANNI
United States District Judge